IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BRYANT JACKSON,**

        **Plaintiff,**

v.                                                    Civil Action No. 3:22cv729

**THE TOWN OF FARMVILLE,** *et al.*,

        **Defendants.**

**MEMORANDUM OPINION**

This matter comes before the Court on the Town of Farmville's ("Farmville" or "the Town") Motion to Dismiss Plaintiff Bryant Jackson's Complaint. (ECF No. 9.) Jackson brings this action against Farmville and Officer Dalen Colbentz. In his Complaint, Jackson claims that Farmville and Colbentz violated his constitutional rights as protected by 42 U.S.C. § 1983[1] ("Section 1983") and the Fourth[2] Amendment of the United States Constitution. (ECF No. 1, at

---

[1] This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[2] The Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

7–9, 10–13.) Jackson also brings Virginia state law claims of battery and intentional infliction of emotional distress against Colbentz. (ECF No. 1, at 9–10.)

Farmville filed a Motion to Dismiss Jackson's Complaint. (ECF No. 9.) Colbentz filed an Answer. (ECF No. 14.) Jackson responded to Farmville's Motion to Dismiss. (ECF No. 11.) Farmville replied. (ECF No. 12.)

These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[3] For the reasons that follow, the Court will grant Farmville's Motion to Dismiss. The Court will continue to hear the three counts against Dalen Colbentz.[4]

---

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jackson brings three of his claims under Section 1983 and the Fourth and Fourteenth Amendments. (ECF No. 1, at 10, 13.)

[4] Officer Dalen Colbentz has answered. (ECF No. 14.) Count I (Fourth Amendment-Excessive Force), Count II (Battery); and Count III (Intentional Infliction of Emotional Distress) against Officer Colbentz will be addressed by subsequent proceedings.

## I. Factual and Procedural Background

### A. Factual Background[5]

Jackson's claims stem from his December 18, 2020 arrest by Officer Coblentz.[6] (ECF No. 1 ¶¶ 8–15.)

As Jackson returned home from work on December 18, 2020, he noticed a police car "approach his residence with the lights turned off." (ECF No. 1 ¶ 9.) Officer Coblentz exited the police car and, after Jackson confirmed his identity, "grabbed [Jackson's] arm and informed [Jackson] that he was being arrested for distribution of marijuana." (ECF No. 1 ¶ 9.) Jackson "asked Officer Coblentz for more information about the allegation," but in response Coblentz only "tightened his grip [on Jackson's arm] and said they would 'discuss everything at the precinct.'" (ECF No. 1 ¶ 10.) Jackson was "calm and cooperative during [his] exchange [with Coblentz]." (ECF No. 1 ¶ 10.)

---

[5] For purposes of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Jackson's Complaint, (ECF No. 1), as true and draw all reasonable inferences in favor of Jackson. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[6] In Jackson's "Preliminary Statement," as opposed to his "Statement of Facts," he describes a separate interaction with Farmville police officers that occurred on August 23, 2020. (ECF No. 1, at 2–3.)
In that interaction, Jackson was driving when a police car "began to aggressively follow him" and ultimately pulled him over. (ECF No. 1, at 2.) Jackson states that the police car "attempted to bump the back of [his car]," "the officer approached [his car] with his gun drawn and pointed at [Jackson]," and that the officer "called for back up . . . [and] eight (8) or nine (9) officers responded to the scene." (ECF No. 1, at 2.) Jackson's car was searched without consent and the officers recovered a small amount of marijuana. (ECF No. 1, at 2.)
Jackson does not name any officer involved in the August 2020 interaction, including Officer Colbentz. To the extent this preliminary statement is meant to suggest a relevant pattern of conduct or policy, it does not.

3

A second officer was present at the scene and he "placed his hand on his gun[] in a clear effort to intimidate [Jackson]." (ECF No. 1 ¶ 10.) In addition, Officer Coblentz "handcuffed [Jackson] very tightly" before seating him in the back of the police car. (ECF No. 1 ¶ 11.)

When they arrived at the magistrate's office, "Officer Coblentz opened the back door [of the police car] and told . . . Jackson [to] get out." (ECF No. 1 ¶ 11.) Jackson "suffers from a disability in his left leg that causes difficulties in his mobility" that made it difficult to "push himself out of the [police car while] his hands . . . were handcuffed tightly behind his back." (ECF No. 1 ¶ 12.) Jackson "expressed his discomfort and inability to move on his own to Officer Coblentz" and asked him "to loosen his handcuffs." (ECF No. 1 ¶ 12.) Officer Coblentz then "grabbed [Jackson's] right arm and pulled [Jackson] up so hard that his head slammed into the plexiglass that divides the front of the police [car] from the back." (ECF No. 1 ¶ 13.) When Jackson "cried out and asked why [Coblentz] was being so rough," Officer Coblentz "simply point[ed] to his body worn camera, apparently to indicate that it was turned on." (ECF No. 1 ¶ 13.)

At no point during his encounter with Officer Coblentz did Jackson resist arrest. (ECF No. 1 ¶ 14.) Jackson alleges that Coblentz "used excessive and unnecessary force against [him] and acted with conscious disregard that his conduct would cause severe physical and mental injury." (ECF No. 1 ¶ 14.) Jackson further submits that Coblentz's "level of force was completely unreasonable under the circumstances of the case, given that [he] was nonviolent, unarmed, had no history of violence, was being arrested for a marijuana offense (which was later dismissed), and cooperated with the officers' commands." (ECF No. 1 ¶ 15.)

B. **Procedural Background**

Jackson brings five Counts in his Complaint, two of which apply to Farmville:[7]

**Count IV:** Municipal Liability-Ratification, in violation of Section 1983. Farmville did not "discipline[], reprimand[], re[-]train[], suspend[], or otherwise penalize[]" Officer Colbentz in connection with his use of excessive force with Jackson. (ECF No. 1 ¶ 43.) Farmville is "perpetuating, sanctioning, tolerating[,] and ratifying the outrageous conduct and other wrongful acts [of Officer] Coblentz." (ECF No. 1 ¶ 48.) ("Ratification Count").

**Count V:**[8] Municipal Liability-Failure to Train, in violation of Section 1983. Farmville "has failed to properly train and supervise its officers[,] allowing officers to act with excessive force even after subduing a suspect and handcuffing him [or her]." (ECF No. 1 ¶ 51.) ("Failure to Train Count").

In response to Jackson's Complaint, Farmville filed the instant Motion to Dismiss, seeking to dismiss all Counts against it. (ECF No. 9.) Jackson responded to the Motion to Dismiss. (ECF No. 11.) Farmville replied. (ECF No. 12.)

For the following reasons, the Court will grant Farmville's Motion to Dismiss. The Court will dismiss Counts IV (Ratification Count) and V (Failure to Train Count) against Farmville.

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl.*

---

[7] As noted earlier, the Court does not address the three counts brought against Colbentz in this opinion. They are: Count I (Fourth Amendment-Excessive Force); Count II (Battery); and Count III (Intentional Infliction of Emotional Distress).

[8] Jackson labels his Failure to Train Count as a second Count IV. For clarity, the Court will refer to this Count as "Count V" throughout this opinion.

5

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere "labels and conclusions" declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 555-56; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This analysis is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)). This principle applies only to factual allegations however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that

6

is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."[9] *Witthohn*, 164 F. App'x at 396–97 (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

### III. Analysis

Farmville moves to dismiss all Counts against it in Jackson's Complaint. The Court will grant the Motion to Dismiss the Ratification and Failure to Train Counts (Counts IV and V) because Jackson fails to allege sufficient facts to establish *Monell* liability under a Ratification or Failure to Train theory.

---

[9] Farmville properly filed an exhibit to their Motion to Dismiss: the police records from Jackson's interactions with the Farmville Police Department. (ECF Nos. 10-1, 10-2.) "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

While Jackson does not assert that he disputes the authenticity of the exhibits provided by Farmville, he also does not specifically agree as to their authenticity. Because there is no express agreement as to their authenticity, and because the Court does not find them necessary to aid its decision, the Court declines to consider the records submitted by Farmville in its review of its Motion to Dismiss.

### A.     Jackson Fails to Adequately Plead Ratification or a Failure to Train Pursuant to *Monell*

The Court must address whether Farmville can be held liable to Jackson under well-established theories of municipal liability. The Court concludes that Jackson fails to state sufficiently plausible facts under a ratification or a failure to train theory.

#### 1.     Legal Standard: *Monell* Liability, Generally

"For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Although an underlying constitutional violation is a *necessary* element of municipal liability, it is not *sufficient*: a municipality cannot "be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 553–54 (quoting *Monell*, 436 U.S. at 691). Liability will arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 554 (quoting *Monell*, 436 U.S. at 694). "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

The United States Court of Appeals for the Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens[;"] or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Jackson's Complaint attempts to establish *Monell* liability under the second and third avenues: the decisions of a person with final policymaking authority[10] and deliberate indifference through failure to adequately train officers. (ECF No. 1, at 10–13.)

> 2. **Because Jackson's Allegations Pertain Only to the December 2020 Incident Involving Officer Colbentz, and He Does Not Identify a Person with Final Policymaking Authority nor Does he Allege that the Failure to Discipline Officer Colbentz Caused Jackson's Injury, Jackson Fails to Allege a *Monell* Claim Against Farmville Based on Ratification**

Jackson's Complaint alleges facts pertaining to only one incident with Officer Colbentz and does not identify a person with final policymaking authority.[11] Jackson cannot bring a *Monell* claim premised on these insufficient pleadings. Further, even if Jackson had identified a person with final policymaking authority and alleged facts pertaining to that person's decision not to discipline Officer Colbentz, such a decision does not support *Monell* liability based on ratification because the failure to discipline did not cause Jackson's alleged constitutional violation. *See Franklin v. City of Charlotte*, 64 F.4th 519, 536 (4th Cir. 2023).

> a. **Legal Standard: *Monell* Liability for Ratification by a Person with Final Policymaking Authority**

The second basis of *Monell* liability identified by the Fourth Circuit arises from "decisions of a person with final policymaking authority." *Lytle*, 326 F.3d at 471. "Although municipal liability under Section 1983 attaches only to 'action [taken] pursuant to official

---

[10] As explained below, the ratification theory that Jackson brings in Count IV is "one means of holding a final policymaker liable under *Monell*." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4h 529 (4th Cir. 2022) (citation omitted).

[11] Even presuming that the August 2020 incident pertains, Jackson's Ratification claim of liability fails. He names no decision maker as to both events.

9

municipal policy of some nature, . . . it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" *Hunter*, 897 F.3d at 554 (quoting *Pembaur*, 475 U.S. at 477, 480). When a final policymaking official "merely 'go[es] along with the discretionary decisions made by one's subordinates . . . [it] is not a delegation to them of the authority to make policy.'" *Lytle*, 326 F.3d at 472 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130) (1988) (second alteration in original).

However, when a final policymaker "has the authority to review the decision of a subordinate, its approval of that allegedly unconstitutional decision can also give rise to liability under Section 1983." *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022) (citing *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994)). This is known as ratification liability and it "critically differs from [*respondeat superior*] liability, . . . which is impermissible under *Monell* . . . , [because r]atification liability does not hold a municipality liable for the actions of subordinate officials; rather it holds the municipality liable for *its own decision* to uphold the actions of subordinates." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989)) (emphasis in original). Under the ratification theory of liability, the final decisionmaker's ratification of a subordinate's decision must still *cause* the alleged constitutional injury. *See Franklin*, 64 F.4th at 537 (finding that a city manager's decision that an officer acted in conformity with the department's use-of-force policy did not constitute ratification for *Monell* liability because the "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation").

10

> The Supreme Court has described an "official policy" as follows:
>
> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of [Section] 1983.

*Hunter*, 897 F.3d at 554 (quoting *Pembaur*, 475 U.S. at 481) (emphasis omitted). The "touchstone inquiry is whether 'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" *Id.* At 554–55 (quoting *Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2016)).

To qualify as a "final policymaking official," an official must have the responsibility and authority to implement final locality policy with respect to a particular course of action. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government."). When determining which officials have final policymaking authority for the allegedly unconstitutional action in question, courts "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Riddick*, 238 F.3d at 523 (internal quotation marks and citations omitted).

### b. Jackson Has Not Alleged Sufficient Plausible Facts to Support a Ratification Theory of *Monell* Liability Because he Does Not Identify a Decision-Making Person or Entity

Because Jackson alleges facts as to only one December 2020 incident with Officer Colbentz and Jackson does not identify a person with final policymaking authority, the Court cannot conclude that Jackson has plausibly alleged an official policy or custom attributable to Farmville. Even favorably viewing the August 2020 event as an additional improper event, the Court will dismiss Jackson's Ratification Count (Count IV) against Farmville.

First, Jackson's Complaint fails to adequately identify any person with final policymaking authority who could ratify Officer Colbentz's decisions or conduct. Nor does he allege any facts to support an inference that such ratification occurred. In support of his Ratification Count, Jackson states that "[u]pon information and belief, Defendant Coblentz was not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with [Jackson's] assault and battery." (ECF No. 1 ¶ 43.)

Jackson not only fails to identify a person or entity who decided not to discipline Coblentz or any other officers, Jackson adds no facts suggesting such a custom, much less a ratification, occurred. He does not, for example, allege that he reported Officer Coblentz's actions to anyone. Nor does he suggest that the Town was aware of the interaction, that any review of the interaction took place, or that any official decision was made *not* to discipline Coblentz. Indeed, while Jackson says in a conclusory fashion that several "unconstitutional customs, practices, and policies" exist the Farmville police department, including the "[u]se of excessive force" and "[f]ailing to adequately discipline [Farmville's] police officers," his Complaint is bereft of facts plausibly alleging any such custom, practice, or policy. (ECF No. 1

¶ 45.) Jackson's claims of Farmville having or ratifying a custom of excessive force in the Town's police force fail to state a claim by nearly every measure.

### c. Jackson Has Not Alleged Sufficient Plausible Facts to State that, Even If a Ratification Decision Had Been Made, it <u>Caused a Constitutional Violation That He Suffered</u>

Next, even if Jackson had sufficiently alleged that an individual or entity with final policymaking authority decided not to discipline Officer Coblentz, Jackson could not succeed on a ratification theory of *Monell* liability because such a decision did not cause the constitutional violation that he alleges occurred. *See Franklin*, 64 F.4th at 536.

In *Franklin v. City of Charlotte*, the Fourth Circuit analyzed whether a City Manager's decision to affirm a "Shooting Review Board's" finding that a fatal shooting by an officer was justified and consistent with the use of force policy constituted ratification of the officer's decision. 64 F.4th at 528, 536–37. In *Franklin*, no party disputed that the City Manager was a final decisionmaker and that he exercised final decision-making authority when he affirmed the board's finding. *Id.* at 536. But the Fourth Circuit found that the defendant's death, i.e., his constitutional violation, was "not traceable to a subordinate's decision that may be approved as final by a city policymaker." *Id.* at 536–37. The *Franklin* court reasoned that the City Manager's decision was not a ratification that could support *Monell* liability because "the City Manager's post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation . . . . Reversing the City Manager's decision cannot undo what is done." *Id.* at 537 (contrasting the case to *Praprotnik*, 485 U.S. 112, where a city employee suffering from an adverse employment action could have been reinstated if the city's commission had found in favor of the plaintiff).

13

Similarly, here, even if Jackson had identified a final policymaking authority that had decided not to discipline Officer Coblentz, the decision of that individual or entity could not undo the constitutional violation he allegedly suffered from Coblentz's excessive use of force. Thus, the failure to discipline Officer Coblentz did not cause Jackson's injury and is not a decision that can support a ratification theory for *Monell* liability. Thus, the Court will dismiss the Ratification Count (Count IV) against Farmville.

### 3. Because Jackson Describes Only the Incident Involving Officer Colbentz and an Unrelated Incident with Unknown Officers, He Fails to State a *Monell* Failure to Train Claim Against Farmville

The Court now turns to the second avenue through which Jackson pursues his *Monell* claim against Farmville: the City's failure to train its officers.

Jackson flatly and repeatedly asserts that Farmville failed to properly train and supervise its police officers, meaning that officers, including Officer Colbentz, were allowed to act with excessive force. Jackson cannot bring a *Monell* claim premised on these conclusory allegations and formulaic recitation of elements without some plausible facts suggesting an official policy or custom existed. He describes only the December 2020 incident involving Officer Colbentz (and an unrelated August 2020 incident with unnamed Farmville police officers) absent any specific facts regarding the adequacy of the training program. Thus, Jackson cannot bring his Section 1983 *Monell* claim against Farmville on the basis of a failure to train (Count V).

#### a. Legal Standard: *Monell* Liability for Failure to Train

The third basis for *Monell* liability identified by the Fourth Circuit arises "through an omission, such as a failure to properly train officers." *Lytle*, 326 F.3d at 471. A municipality's failure to train may support § 1983 liability where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton v. Harris*, 489

U.S. 378, 388 (1989), and is the "moving force [behind] the constitutional violation." *Id.* at 389 (internal quotations omitted). This municipal liability theory thus has two components in addition to an underlying constitutional violation: deliberate indifference and causation.

To amount to "deliberate indifference," a failure to train must reflect the municipality's "deliberate" or "conscious" choice. *Id.* at 379. A "deliberate" choice requires that the municipality have "fair *notice* that subordinates are engaged in constitutional or statutory deprivations" and regardless "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (citing *Harris*, 498 U.S. at 389). Plaintiffs may establish deliberate indifference in two ways. First, they may show that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (quoting *Gallimore v. Henrico Cnty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014)). Second, they may demonstrate that the municipality has failed to train its employees on "an obvious constitutional duty that particular employees are certain to face." *Id.* at 538 (quoting *Gallimore*, 38 F. Supp. 3d 726). This second method is limited, however, to a "narrow scope" of constitutional duties. *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 843 (E.D. Va. 2011).

A plaintiff must also demonstrate a "causal nexus" between the deficient training and the alleged constitutional violation. *Brown*, 308 F. Supp. 2d at 694. Generally, a plaintiff cannot demonstrate a causal connection "by proof of a single incident of unconstitutional activity alone." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). Rather, a plaintiff must show that the "deficiency in training actually caused" the violation. *Canton*, 489 U.S. 378, 391. However, in limited cases, a single incident can constitute support for a causal connection where the constitutional duty is so obvious that without proper training, "the specific violation [was]

'almost bound to happen, sooner or later.'" *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (citing *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985)).

### b. Jackson Has Not Alleged Sufficient Facts to Support a Failure to Train *Monell* Claim Against Farmville

As to his second theory of *Monell* liability, Jackson's Complaint fails to set forth sufficient facts to establish *Monell* liability under a failure to train theory. Because Jackson again recites only conclusory allegations that Farmville did not properly train its police officers (and does not suggest that Farmville has *no* policy or training on use of force), Jackson's claim of liability based on a failure to train must falter.

First, Jackson does not allege any facts to support a continued pattern of excessive use of force by Farmville police officers. Jackson's Complaint includes allegations regarding a single December 2020 incident with Officer Coblentz in which he claims Coblentz used excessive force. Jackson references an interaction with Farmville police officers in August 2020, seemingly to support a contention that there is a pattern of misconduct among officers. But Jackson's allegations from that interaction fall short of establishing a pattern of excessive force. He does not allege "deliberate indifference" through a failure to train by demonstrating that "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Moody*, 93 F. Supp. 3d at 538 (quoting *Gallimore*, 38 F. Supp. 3d at 726).

Next, any attempt to demonstrate Farmville's "deliberate indifference" through a failure to train its agents on "an obvious constitutional duty that particular employees are certain to face," *id.*, founders because Jackson's failure to train allegation echoes the same type of legal conclusions that other courts within this district have already held cannot survive a motion to dismiss. For instance, in *Lee v. City of Richmond*, the plaintiff alleged that the City's officers' training: "(1) . . . was inadequate . . . ; (2) the inadequate training constitute[d] deliberate

16

indifference . . . ; and (3) the risk of constitutional injury as a result of such deliberate indifference . . . is very obvious," No. 3:12cv471, 2013 WL 1155590, *7 (E.D. Va. Mar. 19, 2013) (internal quotation marks omitted) (third and fifth alterations in original). The *Lee* court concluded that those scant allegations were inadequate to impose liability upon the City, as they were "the exact type of 'labels and conclusions and a formulaic recitation of the elements of a cause of action' that *Twombly* says 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Jackson's allegations as to Farmville's failure to train and failure to adequately train are similarly—and fatally—conclusory and scant. Jackson's Complaint simply states that Farmville "failed to properly train and supervise its officers[,] allowing for officers to act with excessive force even after subduing a suspect and handcuffing him." (ECF No. 1 ¶ 51.) He adds that Officer Colbentz "illustrated this lack of training when he violated . . . Jackson's Fourth Amendment rights by using excessive force against [him]." (ECF No. 1 ¶ 52.) Jackson then concludes that Farmville's "failure to train officers on the laws of the United States and the Commonwealth of Virginia constitutes deliberate indifference to the rights of the people, such as [Jackson], with whom officers, such as Defendant Coblentz, come into contact." (ECF No. 1 ¶ 53.) Because Jackson falls prey to "the exact type of 'labels and conclusions and a formulaic recitation of the elements of a cause of action' that *Twombly* says 'will not do,'" *Lee*, 2013 WL 1155590 at *7 (quoting *Twombly*, 550 U.S. at 555), his "failure to train" theory must fail.

The Court recognizes that another case within this district may turn an eye toward a different conclusion: *Moody*, 93 F. Supp. 3d 516. There, the plaintiff alleged that:

> 'the need for specialized training' [concerning the use of deadly force] . . . 'is so obvious' and the 'inadequacy of the training . . . is so likely to result in the violation of constitutional and federal rights . . .' that the 'failure to provide such specialized training . . . is deliberately indifferent to those rights such as those described herein' because of the 'duties and responsibilities of those police officers that participate in arrests.'

17

*Moody*, 93 F. Supp. 3d at 539 (second, third, fourth, and fifth alterations in original). Moody claimed that when six officers shot and paralyzed him in his car, the police used deadly force unconstitutionally. *Id.* at 524. The *Moody* court ultimately held that, "read in the light most favorable to Plaintiff, he alleges that the police officers that participate in arrests require special training because of the obvious risk, absent such training, that an armed officer might unconstitutionally seize a suspect, yet, the City has not provided them with such specialized training." *Id.* at 539.

However, *Moody* is inapposite because Moody plainly alleged that the municipality imposed *no* training whatsoever with respect to use of deadly force. *Id* at 539-40. Here, Jackson's allegations do not, even read favorably, plausibly allege that no training as to excessive force occurs. He states that Farmville failed to "properly" train its officers, but he does not allege that Farmville police officers receive no excessive force training. (ECF No. 1 ¶ 51.) Certainly, a complete failure to train on bedrock police responsibilities such as the appropriate use of force could render constitutional violations "bound to happen, sooner or later." *Moody*, 93 F. Supp. 3d at 540. But even reading Jackson's vague allegations favorably, the Court cannot reasonably infer that Jackson alleges that Farmville has wholly failed to adopt a policy governing the excessive use of force, or to train for it.

Jackson therefore does not allege sufficient facts to plausibly state a claim to establish *Monell* liability based on a failure to train theory. Accordingly, the Court will dismiss the Failure to Train Count (Count V).

## IV. Conclusion

For the foregoing reasons, the Court will grant Farmville's Motion to Dismiss. (ECF No. 9.) The Court will dismiss all Counts against Farmville without prejudice: the Ratification Count (Count IV) and the Failure to Train Count (Count V). The Counts against Dalen Colbentz remain in their entirety.

An appropriate Order shall issue.

Date: 6-7-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge